UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS

ADAM C. METEVIA                              NO. 24-00004-BAJ-RLB

RULING AND ORDER

Now before the Court is Defendant's **Motion To Dismiss Count One Of The Indictment (Doc. 15, the "Motion")**, which raised facial and as-applied constitutional challenges to 18 U.S.C. § 922(g)(1), as well as Defendant's **Memorandum In Support Of Motion To Dismiss Indictment In Light Of *Diaz* (Doc. 31)**. The Government has opposed Defendant's Motion. (Doc. 32). For reasons provided below, Defendant's Motion is **DENIED**.

I.  **LEGAL STANDARD**

Federal Rule of Criminal Procedure 12 allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1).

Here, Defendant pursues "as applied" and facial challenges to § 922(g)(1). "The distinction between as applied and facial challenges is sometimes hazy." *United States v. Perez*, 43 F.4th 437, 443 (5th Cir. 2022) (citation omitted). Generally, however, in an as-applied challenge, the Court assesses whether a law with some permissible uses "is nonetheless unconstitutional as applied to [the defendant's] activity." *Spence v. Washington*, 418 U.S. 405, 414 (1974) (reversing defendant's

criminal conviction); *see Street v. New York*, 394 U.S. 576, 594 (1969) (same). By contrast, in a facial challenge, the Court looks more broadly, assessing whether a law "could never be applied in a valid manner." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798 (1984).

## II.  DISCUSSION

Since the filing of Defendant's Motion, the Supreme Court and the U.S. Court of Appeals for the Fifth Circuit have provided additional guidance on the constitutionality of 18 U.S.C. § 922(g)(1). The Court outlines such developments below, then analyzes the impact of this case law on Defendant's Motion.

### a. Second Amendment Jurisprudence

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. These twenty-seven words, largely unquestioned since their first utterance, *see* Danny Y. Li, ANTISUBORDINATING THE SECOND AMENDMENT, 132 Yale L.J. 1821, 1846 (2023), have caused considerable consternation among our Nation's courts in the past two decades. The results of this attention have been dramatic. The Second Amendment was reinterpreted to provide an individual right to firearms, *D.C. v. Heller*, 554 U.S. 570, 595 (2008), the Supreme Court declared that the Second Amendment is no longer a so-called "second-class right," *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 70 (2022), and existing constitutional tests for firearm regulations were upended in favor of extended dives into distant history in

2

search of metaphorical ancestors to present-day legislation. *See United States v. Rahimi*, 602 U.S. 680, 697–701 (2024).

Thus, the Court arrives at its current marching orders. When a challenge to firearm legislation is lodged, the Court is to: (1) ascertain whether the "Second Amendment's plain text covers [the] individual's conduct," and (2) if the Second Amendment does cover the relevant conduct, determine whether the Government has satisfied its burden of showing that "the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. 1, 24 (2022). In this process, the Court must not conflate the requirement for a "historical analogue" with a necessity for a "historical twin," or an identical regulation from this Nation's early history. *Rahimi*, 602 U.S. at 701.

The Fifth Circuit has also provided guidance to lower courts for navigating the post-*Bruen* landscape. In *United States v. Diaz*, 116 F.4th 458, 471 (5th Cir. 2024), the Fifth Circuit held § 922(g)(1) constitutional as applied to a defendant possessing prior convictions for car theft, evading arrest, and possessing a firearm as a felon. The Fifth Circuit reasoned that since theft was a felony at the time of the Founding, and since felonies at the time of the Founding were punishable by death, then the non-capital punishment of disarmament is also permissible. *Id.* at 469. The Fifth Circuit further noted the existence of other laws in place at the time of the Founding that disarmed "those who menaced others with firearms," "disrupted the 'public

3

order,'" and pursued actions that "le[d] almost necessarily to actual violence." *Id.* at 470–471 (quoting *Rahimi*, 602 U.S. at 697).

Since deciding *Diaz*, the Fifth Circuit has not had occasion to consider the constitutionality of an as-applied challenge to § 922(g)(1) for a defendant specifically having an underlying felony conviction for drug possession. However, numerous district courts in the Fifth Circuit have upheld § 922(g)(1)'s constitutionality in the face of as-applied challenges for defendants with felony drug possession convictions under the theory that several founding-era laws banning the possession and/or trafficking of various items of non-alcoholic or present-day controlled substance "contraband" constitute the requisite "historical analogue" to present-day laws banning drug possession. *See United States v. Robinson*, No. 2:22-cr-00253, 2024 WL 4827375 (E.D. La. Nov. 19, 2024); *United States v. Walton*, No. 2:24-cr-00066, 2025 WL 259370 (E.D. La. Jan. 17, 2025); *United States v. Carter*, No. 2:23-cr-00022, 2024 WL 4723236 (E.D. La. Nov. 8, 2024); *United States v. Wilson*, No. 2:22-cr-00238, 2024 WL 4436637 (E.D. La. Oct. 6, 2024); *United States v. Barfield*, No. 2:24-cr-00007, 2024 WL 4859094 (W.D. La. Nov. 21, 2024); *United States v. Patino*, No. 7:24-cr-00060, 2024 WL 5010146 (W.D. Tex. Nov. 26, 2024); *United States v.* Mack, No. 3:24-cr-00244, 2025 WL 221808 (W.D. La. Jan. 16, 2025); United *States v. Landrum*, No. 3:24-cr-00063, 2024 WL 4806486 (S.D. Miss. Nov. 15, 2024); *United States v. Staeger*, No. 1:24-cr-00108, 2025 WL 605053 (S.D. Miss. Feb, 25, 2025).

4

### b. Defendant's Challenges to § 922(g)(1)

The Court begins with Defendant's facial attack on § 922(g)(1). Such an attack was foreclosed by the Fifth Circuit's decision in *Diaz*. To sustain a facial challenge, "the challenger must establish that no set of circumstances exists under which the statute would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The Fifth Circuit ruled that § 922(g)(1) was constitutional as applied to Diaz, and thereby ruled that § 922(g)(1) is facially constitutional. *Diaz*, 116 F.4th at 472.

Regarding Defendant's as-applied challenge, for present purposes the Government cedes that the first step of the *Bruen* analysis is satisfied as to Defendant, and that Defendant, as a member of "the people," is afforded Second Amendment rights. (Doc. 32 at 5–6). The Government likewise does not contend, for present purposes, that the Second Amendment's plain text does not cover Defendant's conduct. (*Id.* at 6). The Court thus proceeds to the second step: whether there is a historical analogue for the application of § 922(g)(1) to Defendant.

The Government contends that there are historical analogues—namely, statutes forbidding "contraband" possession in place at or around the era of our Founding—that support the application of § 922(g)(1) to Defendant. (*Id.* at 7–11). To that end, the Government cites numerous authorities for the proposition that certain forms of contraband possession constituted common-law felonies punishable by death or many years' incarceration in the United States during the Founding Era. (*Id.*). As noted *supra*, the broad consensus among the vast preponderance of districts in the

Fifth Circuit has been to accept this characterization of the legal climate in the Founding Era. And, although the Fifth Circuit has not yet ruled squarely on the issue, many circuit and district courts across the country have furthered this understanding of § 922(g)(1)'s constitutionality as applied to those with narcotics possession convictions such as that accrued by the Defendant.[1] *See United States v. Jackson*, 110 F.4th 1120 (8th Cir. 2024) (holding that Congress may disarm individuals with certain felony convictions who present an unacceptable risk of dangerousness or "who deviate[d] from legal norms," such as through drug possession); *United States v. Canales*, 702 F. Supp. 3d 322 (E.D. Pa. 2023); *United States v. Goins*, 647 F. Supp. 3d 538 (F. Supp. 3d 538 (E.D. Ky. 2022), *aff'd*, 118 F.4th 794 (6th Cir. 2024); *United States v. Pearson*, No. CR 22-271, 2023 WL 6216527 (E.D. Pa. Sept. 25, 2023); *United States v. Blackshear*, No. CR 23-159, 2023 WL 5985284 (E.D. Pa. Sept. 14, 2023); *United States v. Reichenbach*, No. 4:22-CR-57, 2023 WL 5916467 (M.D. Pa. Sept. 11, 2023); *United States v. Wise*, No. 21-CR-511, 2023 WL 6260038 (W.D. Pa. Sept. 26, 2023).

This Court, too, recently found that a defendant's prior convictions for possession of drugs and possession of a firearm alongside drugs were sufficiently

---

[1] The Court notes that in *United States v. Connelly*, 117 F.4th 269 (5th Cir. 2024), the Fifth Circuit ruled that "disarming a sober person based solely on past substance usage" did not fit within our nation's history and tradition. However, the Fifth Circuit distinguished this ruling in *United States v. Contreras*, 125 F.4th 725 (5th Cir. 2025), by upholding § 922(g)(1) as applied to a defendant who was under the influence of marijuana at the time of his arrest for possession of a firearm, and in *United States v. Kimble*, 142 F.4th 308 (5th Cir. 2025), by upholding its application to a defendant with prior convictions for drug trafficking.

6

analogous to the founding era crimes of "possession of and trafficking in contraband," such that disarmament on these grounds "fits nearly within [our nation's historical] tradition." *United States v. Chenier*, 2025 WL 1901345, at *4 (M.D. La. July 9, 2025) (deGravelles, J.).

The government also argues that application of § 922(g)(1) to Defendant is constitutional on account of his dangerousness, noting that "each of the predicate offenses arose out of Defendant's use of a firearm to commit or threaten a violent act." (Doc. 32 at 12-13). The Fifth Circuit has indeed held that disarmament is valid based on a defendant's perceived dangerousness, *United States v. Connelly*, 117 F.4th 269, 278 (5th Cir. 2024), that "drugs and guns are a dangerous combination," *Smith v. United States*, 508 U.S. 223, 240 (1993), and that courts may consider the facts underlying a defendant's felony convictions. *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024). Here, the government has similarly shown that the circumstances surrounding Defendant's prior convictions and arrest were sufficiently dangerous such that the application of § 922(g)(1) does not offend our nation's history and tradition of disarmament.

Based on the authority described *supra* and the Fifth Circuit's ruling in *Diaz*, the Court concludes that the Government has carried its burden under step two of the *Bruen* analysis to identify a historical analogue such that § 922(g)(1)'s application to Defendant, who has previously been convicted of Schedule II drug possession, (Doc. 32 at 2), "fits neatly" within our Nation's history and tradition. *See Rahimi*, 602 U.S.

7

at 698. In reaching this decision, the Court adopts and relies on the Fifth Circuit's reasoning in *Diaz* comparing the "why" and "how" of the historical analogues to § 922(g)(1). *See* 116. F.4th at 469. The Fifth Circuit instructed that the purpose behind imposing capital punishment or estate forfeiture for common-law felonies was to "deter violence and lawlessness," and that the method of punishment was chosen specifically for its permanence. *Id.* Just so here. As applied to Defendant, § 922(g)(1)'s purpose is to deter future violence and lawlessness, and the method is a serious and irrevocable punishment—permanent disarmament—that is a similarly substantial, albeit more forgiving, discipline than Defendant would have faced in this Nation's early years. The Court therefore concludes that § 922(g)(1) is constitutional as applied to Defendant and will deny Defendant's Motion.[2]

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's **Motion (Doc. 15)** be and is hereby **DENIED**.

---

[2] The Court also finds that § 922(g)(1) is constitutional as applied to Defendant based on the Fifth Circuit's reasoning in *United States v. Giglio* where the court found an independent basis to uphold a § 922 (g)(1) conviction where the defendant was found armed while still serving his sentence on supervised release—again because, historically, "convicts could be required to forfeit their weapons and were prevented from reacquiring arms until they had finished serving their sentences." 126 F.4th 1039, 1044 (5th Cir. 2025) (citation omitted); *see also United States v. Contreras*, 125 F.4th 725, 732–33 (5th Cir. 2025). Here, Defendant was similarly arrested in possession of a firearm while serving his sentence supervised release. (Doc. 32 at 13).

8

**IT IS FURTHER ORDERED** that a telephone status conference in this matter shall be **SET** for February 11, 2026, at 3:00 P.M. Dial-in information will be sent to counsel separately.

Baton Rouge, Louisiana, this 4th day of February, 2026

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**